No. 76,684

STATE OF KANSAS, *Appellee*, v. FRANKLIN E. PATTERSON, *Appellant*.

(939 P.2d 909)

Opinion filed May 30, 1997.

*Hazel Haupt*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Franklin E. Patterson appeals from the district court's denial without a hearing of a post-conviction, pro se motion that challenged the legality of his sentence. He raises a question about the validity of prior convictions that formed the basis for enhancement of his sentence under the Habitual Criminal Act. This is the second post-conviction, pro se motion by Patterson to challenge the enhancement of his sentence. See *State v. Patterson*, 257 Kan. 824, 896 P.2d 1056 (1995).

In 1987, Franklin Patterson was convicted by a jury of first-degree murder, aggravated kidnapping, and aggravated robbery. The State sought imposition of the Habitual Criminal Act, K.S.A. 1984 Supp. 21-4504. In support of its motion, the State proposed to

"show the Court that the defendant herein, FRANK E. PATTERSON, has been previously convicted of the felony of Burglary, in Circuit Court Cause No. 5358 and of Grand Larceny, in Circuit Court Cause No. 5948, both in the 2nd District, Bolivar County, Mississippi; and of First Degree Robbery, on June 24, 1969 in Case No. CR5664 in Sedgwick County, Kansas."

The journal entry states that evidence of these prior convictions was presented to the sentencing court, the State's motion for imposition of the Habitual Criminal Act was sustained, and Patterson was sentenced to tripled terms as provided in the Act. He was sentenced to imprisonment for three life terms for murder, three life terms for aggravated kidnapping, and 45 years to three life terms for aggravated robbery. The sentences for aggravated kidnapping and aggravated robbery were to run concurrent with one another and consecutive to the sentence for murder. On direct appeal, Patterson's conviction of aggravated kidnapping was reversed, and the sentence for that conviction was vacated. *State v. Patterson*, 243 Kan. 262, 755 P.2d 551 (1988).

The district court denied a subsequent post-conviction, pro se motion by Patterson that challenged the legality of his sentence. On appeal, this court concluded that the result of application of the habitual criminal provision of 21-4504 to a life sentence was to impose three consecutive life sentences. Patterson had argued that three times life is life. The court rejected Patterson's argument that the statute was ambiguous and that life sentences were excepted from enhancement. 257 Kan. at 828-29.

After this court's most recent opinion on Patterson's sentences was filed in June 1995, Patterson filed an "Ex parte Motion For A Nunc Pro Tunc Order." It is file-stamped November 29, 1995. The motion was denied by the district court, and Patterson took this appeal from the district court's action.

In his November 1995 motion, Patterson claimed, for the first time, that his sentence was illegal because the State had not established that he had been represented by counsel or had waived counsel for the prior convictions used to support imposition of the Habitual Criminal Act. He also argued that the State showed only two prior convictions, whereas three are required if sentences are to be tripled.

In February 1996, the district court denied the motion. The order stated, in part:

"There are no appearances.

. . . .

"1. The State presented sufficient competent evidence of the defendant's prior convictions to justify the imposition of the Habitual Criminal Act.

"2. The defendant's two prior convictions are sufficient to triple his sentence under the Habitual Criminal Act. See K.S.A. 21-4504(b).

"3. The defendant's sentence is not illegal. See *State v. Thomas*, 239 Kan. 457, Syl. 4, 720 P.2d 1059 (1986)."

Patterson filed a timely notice of appeal from the court's order. On appeal, he has not pursued the argument that two prior convictions will not support imposition of the Habitual Criminal Act. "An issue which is not briefed is deemed abandoned." *State v. Wacker*, 253 Kan. 664, 670, 861 P.2d 1272 (1993). He now claims the district court committed error in denying, without a hearing, his motion challenging the prior convictions which were the basis for the imposition of the Habitual Criminal Act.

With regard to jurisdiction, Patterson would have this court note that the district court treated his pro se motion as a motion to correct an illegal sentence. K.S.A. 22-3504 authorizes correction of an illegal sentence at any time. Patterson relies on *Haines v. Kerner*, 404 U.S. 519, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972), and *State v. Randall*, 257 Kan. 482, 894 P.2d 196 (1995), for the proposition that this court can entertain the appeal as that from denial of a motion to correct an illegal sentence or as a K.S.A. 60-1507 petition. K.S.A. 60-2101(b) provides, in part: "The supreme court shall have jurisdiction to correct, modify, vacate or reverse any act, order or judgment of a district court . . . in order to assure that any such act, order or judgment is just, legal and free of abuse."

On the question of representation on prior convictions, Patterson relies primarily on *State v. Duke*, 205 Kan. 37, Syl. ¶ 3, 468 P.2d 132 (1970):

"A record of prior felony conviction which is silent or ambiguous concerning the presence of counsel or the valid waiver thereof is presumptively void, and it alone cannot form the basis for establishing a valid conviction as an element of K.S.A. 21-2611 or for imposing enhanced punishment under the habitual criminal act (K.S.A. 21-107a)."

Patterson contends that the record in the present case fails to establish that he was represented or that he waived representation "in the cases used to enhance this sentence." Patterson does not assert that he was unrepresented or that his right to counsel was violated. Thus, he does not attack his sentence on the ground that prior convictions relied upon to invoke the Habitual Criminal Act are invalid for lack of counsel. The actual ground upon which he attacks his sentence is that the record does not affirmatively show that he was represented when convictions relied upon to invoke the Habitual Criminal Act were obtained.

The record contains documents pertaining to the prior Kansas conviction that was used for enhancement. A copy of the June 1969 journal entry states that Patterson was represented by counsel at trial and sentencing. A copy of the appearance docket shows that his counsel had been appointed soon after Patterson was taken into custody so that he also was represented during pretrial proceedings. The Kansas conviction is not an issue.

The record does not include documentation of the convictions from Bolivar County, Mississippi. The transcript of the sentencing proceeding in the present case, which is in the record, contains references to State's Exhibit Number 3, which "appears to be some packet of papers from the State of Mississippi." When it was offered into evidence by the State, Patterson's counsel objected on the ground that the information was hearsay. The district court, however, found that Exhibit 3 satisfied the requirement of K.S.A. 60-465 for foreign state records and overruled the objection. There is nothing more in the transcript about the Mississippi proceedings.

On appeal, counsel for Patterson states that she was advised by the district court that Exhibit 3 could not be located in the court file. Thus, there is nothing in the record on appeal that shows whether Patterson was represented by counsel in the Mississippi court. This is quite different from a situation in which the evidence of prior convictions introduced by the State at the time of sentencing did not show that defendant was represented when the prior convictions were obtained.

Patterson takes the position that the inadequate record in this case is the State's problem. He reasons that the State has the bur-

den of proving that he had a prior felony conviction or convictions in Mississippi at which time or times he was represented by an attorney. The State's failure to satisfy its burden, according to Patterson's theory, precludes use of the foreign conviction(s) as a basis for imposing enhanced punishment. Patterson argues that "the district court should have convened a hearing [on his motion] at which time it could have properly been ascertained whether the State had truly met its burden of proof in establishing the prior felony convictions."

The State contends that Patterson is mistaken in assigning the burden of proof to it in this post-conviction proceeding. Its argument is built on several propositions. The first is that a presumption of validity attached to the prior convictions when the district court determined that defendant had prior convictions for the purpose of enhancing his sentence. The second is that the presumption of validity clings to the prior convictions so that in a collateral attack the defendant bears the burden of overcoming the presumption of validity. The State relies on the combined teachings of *Parke v. Raley*, 506 U.S. 20, 29-30, 121 L. Ed. 2d 391, 113 S. Ct. 517 (1992); *State v. Jackson*, 255 Kan. 455, 874 P.2d 1138 (1994); and *State v. Duke*, 205 Kan. 37.

In *Jackson*, the court reviewed a trial court's denial without a hearing of a motion to withdraw a guilty plea. A case-by-case determination was upheld:

"A hearing and appointment of counsel may be required for some motions to withdraw a plea of guilty or nolo contendere. However, if there is no substantial question of law or triable issue of fact and the files and records conclusively show that the defendant is not entitled to relief on the motion, then there is no requirement that a hearing be held or that counsel be appointed." 255 Kan. 455, Syl. ¶ 4.

This principle has been applied by the court in post-conviction proceedings that raised other constitutional rights, including the right to (effective) counsel. See, *e.g., Burns v. State*, 215 Kan. 497, 499-500, 524 P.2d 737 (1974) (claim of ineffective assistance of counsel). Thus, in the present case, Patterson's right to a hearing depends on whether his motion included some evidentiary basis rather than mere conclusionary contentions. Scrutiny of the motion

does not reveal any evidentiary basis. Instead, it reveals that Patterson asserted in his motion that the "prior record of felony convictions" was silent regarding representation. Patterson's motion includes a reference to pages 5 through 15 of the transcript from his sentencing. At those pages of the transcript, the Mississippi conviction record is identified as Patterson's by the fingerprint, and defense counsel objected to admission of the record on the ground of hearsay. As already noted, defense counsel did not raise any question of representation with regard to the Mississippi convictions, nor did Patterson assert in his motion that he was unrepresented when the Mississippi convictions were obtained.

In *Duke* this court stated that a silent record of a prior felony conviction regarding presence of counsel or waiver thereof is presumptively void and is not a sufficient basis for establishing a valid prior conviction for the purpose of imposing enhanced punishment under the Habitual Criminal Act. 205 Kan. 37, Syl. ¶ 3. The court's pronouncement was based on its reading of *Burgett v. Texas*, 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), and *Oswald v. Crouse*, 420 F.2d 373 (10th Cir. 1969). This court stated that *Burgett* "made it clear that a conviction obtained in violation of *Gideon* [*v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963) (constitutional right to counsel),] was void and could not be used against a person either to support guilt or enhance punishment for another offense." *Duke*, 205 Kan. at 39. In its decision in *Parke*, the United States Supreme Court cast a different light on *Burgett*:

"There the Court held that a prior conviction could not be used for sentence enhancement because the record of the earlier proceeding did not show that the defendant had waived his right to counsel. [Citation omitted.] Respondent suggests that because *Burgett* involved a state recidivism proceeding, it stands for the proposition that every previous conviction used to enhance punishment is 'presumptively void' if waiver of a claimed constitutional right does not appear from the face of the record. [Citation omitted.] We do not read the decision so broadly. At the time the prior conviction at issue in *Burgett* was entered, state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess. As we have already explained, the same cannot be said about a record that, by virtue of its unavailability on collateral review, fails to show compliance with the well-established *Boykin* [*v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969),] requirements.

". . . Our precedents make clear . . . that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." 506 U.S. at 31.

In *Parke*, the Supreme Court considered the constitutionality of Kentucky's procedure for determining a prior conviction's validity, in light of *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In *Parke*, Raley was charged as a persistent felony offender. He exercised his right under Kentucky law to challenge the validity of prior convictions that formed the basis of the recidivist charge. He moved to suppress two guilty pleas on the ground that "the records did not contain transcripts of the plea proceedings and hence did not affirmatively show that [his] guilty pleas were knowing and voluntary." 506 U.S. at 23. The established state procedure required the prosecution to prove only the existence of the judgment in order for a presumption of validity to attach. Then the burden shifted to defendant to produce evidence of irregularity in the earlier proceeding. Once such evidence had been produced, the burden shifted back to the government to show the validity of the judgment. In Raley's case, the prosecutor introduced certified copies of the prior judgments. Raley gave testimony raising some doubt about the voluntariness of his pleas, the prosecution presented evidence wiping out the doubt, and the trial court denied defendant's motion to suppress the prior convictions. Raley then pled guilty, reserving the right to appeal. The state appellate court affirmed. Raley filed a federal habeas petition and eventually wound up in the Supreme Court.

The Supreme Court's analysis begins with the declaration that "[i]t is beyond dispute that a guilty plea must be both knowing and voluntary. See, *e.g.*, *Boykin*, 395 U.S. at 242." 506 U.S. at 28. It continues:

"In *Boykin* the Court found reversible error when a trial judge accepted a defendant's guilty plea without creating a record affirmatively showing that the plea was knowing and voluntary. . . .

"We see no tension between the Kentucky scheme and *Boykin*. *Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate

recidivism proceeding. To import *Boykin*'s presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458. 464, 468[, 82 L. Ed. 2d 1461, 58 S. Ct. 1019] (1938). Although we are perhaps most familiar with this principle in habeas corpus actions . . . it has long been applied equally to other forms of collateral attack . . . . Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments. See Black's Law Dictionary 261 (6th ed 1990); see also *Lewis v. United States*, 445 U.S. 55, 58, 65[, 63 L. Ed. 2d 198, 100 S. Ct. 915] (1980) (challenge to uncounseled prior conviction used as predicate for subsequent conviction characterized as 'collateral')." 506 U.S. at 29-30.

Building on the foundations of presumed validity and a broad definition of "collateral," the Supreme Court concluded that "[t]here is no good reason to suspend the presumption of regularity here." 506 U.S. at 30. With regard to the missing documentation, the Court stated:

"On collateral review, we think it defies logic to presume from the mere unavailability of a transcript . . . that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." 506 U.S. at 30.

The Court construed *Burgett*, as discussed above, and concluded that it did not necessitate a different result. On the practical considerations, the Court observed that the government may not have superior access to evidence and that any defendant could stifle a recidivism proceeding by raising a constitutional claim if that would place the burden of proof on the government. Summarizing its analysis, the Court stated that "neither our precedents nor historical or contemporary practice compel the conclusion that Kentucky's burden-shifting rule violates due process." 506 U.S. at 34. Thus, it held "that the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under *Boykin*." 506 U.S. at 34.

Justice Blackmun wrote a separate concurring opinion in *Parke* for the purpose of pointing out the difference between use of a burden-shifting formula in a sentencing matter and in a substantive criminal prosecution where the government would have the burden of proof and retain it throughout. He would distinguish *Duke*, where defendant appealed from his conviction of unlawful possession of a pistol after having previously been convicted of a felony, from a case, such as the present one, in which prior convictions formed the basis for imposing enhanced punishment. In the former, the prior conviction is a necessary element of the crime, but in the latter it is not.

*Duke* involved a direct appeal of defendant's conviction of possession of a pistol after having been previously convicted of grand larceny in Alabama. At issue was whether Duke was represented by counsel when convicted of grand larceny in Alabama. Thus, we did not speak to the issue of sentence enhancement based upon prior convictions. We did state in *Duke*:

"Here, unlike in *Burgett* and [*State v.*] *Engberg*, [194 Kan. 520, 400 P.2d 701] we have a journal entry of judgment and sentence showing on its face defendant had counsel at the time he pleaded guilty in Alabama. The presumption in favor of the validity of the foreign judgment and of the truth of the recitals in the journal entry attached. (*Thorn v. Salmonson*, [37 Kan. 441, 15 Pac. 588.]) The burden was upon the defendant to show the journal entry was incorrect and that he, in fact, did not have the benefit of counsel at his prior conviction. (*State v. Jefferson*, 204 Kan. 50, 460 P.2d 610; K.S.A. 60-414[a].)" 205 Kan. at 40-41.

The presumption of validity in *Duke* arose when the prosecution introduced documentary evidence of defense counsel's involvement in the prior conviction. The record on direct appeal contained the documentation, and the matter was established. Although one of the court's syllabus paragraphs dealt with a silent record, *Duke* did not involve a silent record. The record in the present case, not a direct appeal from the conviction and enhanced sentence, does not contain the documentation of prior foreign convictions that was introduced at the time of sentencing. It is a silent record, but not of the type discussed in *Duke*.

In *Oswald v. Crouse*, 420 F.2d 373, the Tenth Circuit case cited in *Duke*, Oswald, a Kansas prisoner, appealed the denial without a

hearing of his petition for a writ of habeas corpus. He attacked his sentence on the ground that Tennessee convictions relied upon to invoke the Habitual Criminal Act were invalid for lack of counsel. It was impossible to determine from the record of the Tennessee convictions whether Oswald was represented. The federal Court of Appeals stated:

"An ambiguous and inconclusive record is tantamount to a silent one, from which we may presume neither the presence of counsel nor the waiver thereof. *Carnley v. Cochran*, 369 U.S. 506, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962). Accordingly, an evidentiary hearing is necessary to determine the validity of the Tennessee conviction. *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967)." 420 F.2d at 374.

As we have seen in *Parke*, the Supreme Court since has decided that it is not reasonable to presume that unavailability of a record on collateral review fails to show compliance with the constitutional requirements. 506 U.S. at 31.

Here, as the defendant did in *Parke*, Patterson is collaterally attacking the enhancement of his sentence years after it has become final. As previously noted, Patterson did not object to the admission or insufficiency of the Mississippi records at trial, nor did he challenge the use of the prior convictions to enhance his sentence in his direct appeal. The Mississippi records were available and could have been made a part of the appellate record in his direct appeal. Patterson should not be allowed to now benefit from such a failure and create a "silent record" by collaterally appealing the validity of his sentence. A defendant who collaterally challenges the use of a prior conviction to enhance his or her sentence has the burden to show he or she did not have the benefit of counsel at the prior conviction and, absent such a showing, the enhanced sentence is presumed to be regular and valid. Here, Patterson has failed to meet that burden and, thus, the district court did not err in denying the motion without a hearing.

Affirmed.