NOT DESIGNATED FOR PUBLICATION

No. 122,067

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNY F. MCCARTY,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed March 26, 2021.
Affirmed in part and dismissed in part.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and MCANANY, S.J.

POWELL, J.:  In 2018, and as part of a plea agreement with the State, Kenny F.
McCarty pled guilty to reckless aggravated battery and the district court granted him a
dispositional departure to probation. In 2019, the State sought revocation of McCarty's
probation on several grounds, including his commission of a domestic battery against the
same victim. McCarty denied the allegation, and, after an evidentiary hearing, the district
court found him in violation of the terms and conditions of his probation, revoked his
probation, and imposed McCarty's underlying prison sentence. McCarty now appeals the

1

revocation of his probation. He also, and for the first time on appeal, claims his sentence is illegal because the district court erred by including several municipal court convictions in his criminal history and by "double counting" two prior misdemeanor domestic battery convictions rendering his criminal history score incorrect.

After a careful review of the record, we find sufficient evidence to support the district court's finding that McCarty violated the terms and conditions of his probation. We also find the district court did not abuse its discretion in revoking McCarty's probation and ordering he serve his underlying prison sentence instead of giving him another chance at probation. As for his illegal sentence claims, we find McCarty has failed to make a colorable claim that his prior municipal court convictions were wrongly included in his criminal history on the grounds they were uncounseled and, therefore, dismiss that claim. We also find McCarty's two prior domestic battery convictions from 2007 and 2010 were not double counted and were properly included in his criminal history as they were used to elevate another prior domestic battery from a misdemeanor to a felony. As McCarty's sentence is not illegal based upon the record before us, we affirm in part and dismiss in part.

FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a plea agreement, McCarty pled guilty to one count of aggravated battery, a severity level 5 person felony. His conviction stemmed from an incident in November 2017 during which he and his on-and-off girlfriend of 25 years, T.J., were drinking and began arguing. During the argument, McCarty shoved T.J., causing her to fall down and break her arm.

At McCarty's sentencing on May 10, 2018, and without objection from McCarty, the district court determined his criminal history score to be B. The district court imposed the mitigated presumptive grid sentence of 114 months' imprisonment for his aggravated

2

battery conviction but granted a dispositional departure to probation for 36 months. One of the conditions of his probation was that McCarty was to have no contact with T.J.

Roughly a year later, the State sought to revoke McCarty's probation, alleging he had violated the conditions of his probation by (1) committing battery-domestic violence, (2) violating a protective order, and (3) having contact with T.J. McCarty denied the allegations and requested an evidentiary hearing.

At the hearing, T.J., McCarty, and McCarty's aunt testified. T.J. described her relationship with McCarty as "a little rocky" over the two decades they had been together. During their relationship the two lived together on and off for a long time in several different homes. T.J. was aware that McCarty was not to have contact with her. After the events of the underlying case, apparently T.J. left the couple's home temporarily, but she kept her clothes, shoes, and "important paperwork" at the home on Piatt Street. Eventually T.J. returned to the home because she had nowhere else to go.

According to T.J., on May 15, 2019, around 1 or 2 p.m., she was at the house on Piatt Street alone, sitting in the front room. Both T.J. and McCarty had been drinking alcohol that day, and T.J. testified that she was sitting on the couch "minding [her] business" when McCarty returned to the house complaining about "something." T.J. engaged with McCarty, which made him angrier, and they continued to argue. "[O]ne thing led to another" and McCarty kicked T.J. in the face twice "for no reason." T.J. called the police while McCarty fled down the street.

Eventually, McCarty returned to the house and was arrested by the Wichita Police Department. According to T.J., officers talked to her inside the house while they kept McCarty outside. T.J. allowed officers to photograph her face. She still had stitches in her lip from a previous altercation, allegedly with McCarty, but T.J. did sustain new bruises and scrapes in this altercation. T.J. was also arrested later that day on an outstanding

3

warrant from the City of Wichita for failing to appear in court against McCarty as the victim in another domestic violence case. During her testimony, T.J. repeatedly asked that she be allowed to leave the witness stand, indicating she was very upset to be testifying.

McCarty's testimony was rife with contradictions. He first testified that while on probation he was not to have any contact with T.J. and claimed he was "staying with a lady." But moments later McCarty then testified he was living at the house on Piatt and that no one else was living with him. He claimed T.J. had her own apartment or "was staying in somewhere."

Regarding the May 15, 2019 incident, McCarty testified he was in the living room of the house and he noticed T.J. and the police walking through his yard. He claimed T.J. suddenly burst inside the house and slammed the door behind her. He also claimed to have opened the door for the police who were knocking and stating they could see T.J. inside the house. He testified that the police took T.J. outside while he remained in the house until he was arrested.

But later in his testimony, McCarty asserted that what drew his attention to the door was not T.J. or the police in his yard but a sound as though one of his cats wanted in "because they always knock on the bucket." He then stated T.J. walked down the side of the house, called the police, and waited for them to arrive because she returned to the porch and entered the house through the unlocked front door. This time he claimed T.J. used a key that she kept with a neighbor to get inside of the house.

McCarty again testified that in May 2019 he was living at his house on Piatt and claimed T.J. was not living with him. He initially denied speaking with the police but then almost immediately admitted to talking with them in the back of the police vehicle

4

following his arrest. McCarty claimed he did not know T.J. was coming over on the day of the incident because she had not been there since he had been on probation.

McCarty then changed his story and claimed that he was not home when T.J. got to the house. He claimed that he returned home from a meeting with his probation officer and, as he came inside the house, heard a noise which sounded like one of his cats wanting inside. He looked up to see two police vehicles "fly up in front of the house" and T.J. come from the other side of his vehicle. He claimed that T.J. ran onto his porch past him, went inside, and slammed the door in his face. He stated that he "said a few words" to T.J. before opening the door for the police, who then proceeded into the house and retrieved T.J. He then claimed that the officers kept him inside the house while they took T.J. outside and then came back in and arrested him. While in the police vehicle he claimed he told the officers he had a protection from abuse (PFA) order against T.J., and the officers arrested T.J. after confirming the PFA's existence.

On cross-examination, McCarty admitted T.J. had lived at the house on Piatt "at one time." He also admitted he told officers he had argued with T.J. the day of his arrest about her drinking and some issues with her family. He then claimed, for the first time, that someone dropped T.J. off at the house, she was drunk, and he confronted her.

He compared the May altercation to the facts underlying his 2018 aggravated battery conviction, accusing T.J. of being drunk and passing out during the events of both incidents. McCarty claimed he had seen the pictures taken by police and that T.J.'s injuries were "old bruises" that she had not had "for many, many years." He then quickly tried to backtrack this statement and claimed that he would not know because he was not around her and did not recollect anything. The State pressed McCarty about T.J. appearing freshly bloodied, and he denied touching her and said, "I wouldn't do nothin' like that."

On redirect, McCarty claimed that the May 2019 altercation was the first time he had any contact with T.J. since being placed on probation.

McCarty's counsel also called McCarty's aunt to testify. She testified that she lived about a block away from McCarty and stated she never went to McCarty's house but that he always came to her house to visit. She saw T.J. at McCarty's house from time to time as she was passing by. However, she could not say if anyone lived with McCarty because she worked night shifts as a nurse, slept during the day, and did not visit McCarty's house.

On May 15, 2019, she had just gotten home from work when a neighbor came over and let her know that McCarty wanted her to go lock up his house. She drove to McCarty's house and did not see T.J. immediately when she pulled up. As she got out of her car at McCarty's house, she saw T.J. run across the street, but T.J. was far enough away from her that she could not see whether T.J. was injured. Finally, McCarty's aunt testified that she could not lock up the house that day because a police officer told her to leave the house.

The district court found by a preponderance of the evidence that McCarty had committed the offense of domestic battery. Specially, the district court stated: "Looking at these allegations I am convinced well beyond a preponderance of the evidence that the defendant committed the offense of battery [domestic violence], as alleged on the [15th] of May, 2019, and that he violated the no contact order with the victim. And I will sustain the violations." The district court elaborated that "this was more than [an] oops" and was convinced there had been an altercation in which T.J. sustained injuries.

In light of finding that McCarty had committed a new crime while on probation—which had been granted as the result of a dispositional departure—and McCarty's history

of violence, the district court revoked McCarty's probation and ordered him to serve his underlying 114-month prison sentence.

McCarty now appeals.

ANALYSIS

On appeal, McCarty raises two main points of error. First, he challenges the revocation of his probation and imposition of sentence. Specifically, he argues insufficient evidence supports the district court's finding that he violated the terms and conditions of his probation. He also argues the district court abused its discretion when it revoked his probation and imposed his underlying sentence. Second, McCarty argues for the first time on appeal that his sentence is illegal. He claims his criminal history score is incorrect because the district court wrongly included his prior municipal court convictions in his criminal history, claiming the State failed to meet its burden of proving that he was represented by counsel or that he waived his right to counsel. He also argues the district court wrongly double counted two prior misdemeanor domestic battery convictions as they were included in his criminal history and used to elevate another domestic battery conviction from a misdemeanor to a felony.

Not surprisingly, the State rejects McCarty's contentions of error on their merits but also argues McCarty's notice of appeal was so deficient that it failed to properly invoke the jurisdiction of this court. Because the State's argument is jurisdictional, we address it first.

I.     WAS MCCARTY'S NOTICE OF APPEAL SUFFICIENT TO INVOKE OUR JURISDICTION?

The State argues we lack jurisdiction to hear McCarty's appeal. McCarty filed a timely pro se notice of appeal after the revocation of his probation, but the State argues

his notice of appeal does not reflect a desire to appeal—but rather is a K.S.A. 60-1507 motion. The State also argues the notice of appeal fails to meet the statutory requirements that it accurately designate the judgment or part thereof McCarty wishes to appeal and that it name the appellate court to which the appeal would be taken.

Whether appellate jurisdiction exists is a question of law subject to unlimited review. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). To the extent resolution requires interpretation of a statute, our review is also unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

McCarty's notice of appeal begins by stating:  "Comes now the Defendant, Kenny F. McCarty moves this Court for an order of appeal on the above entitled matter." The notice of appeal then goes on to identify potential ineffective assistance of counsel claims regarding the evidentiary hearing for the revocation of his probation. Those claims have not been pursued in this appeal.

As the State indicates, K.S.A. 2020 Supp. 60-2103(b) requires that the notice of appeal "specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." K.S.A. 60-2103(b) is liberally construed "'to assure justice in every proceeding.'" *State v. Laurel*, 299 Kan. 668, 673, 325 P.3d 1154 (2014); see *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010). "'While the State only has limited appeal rights, a criminal defendant has a nearly unlimited right of review.' [Citations omitted.]" *State v. Berreth*, 294 Kan. 98, 110, 273 P.3d 752 (2012). Generally, when a timely notice of appeal contains deficiencies, appellate courts require the State to show it was prejudiced. *Laurel*, 299 Kan. at 674.

Although the State argues that McCarty's notice of appeal is a K.S.A. 60-1507 motion in disguise, the notice of appeal does not purport to be such a motion. Nothing in the notice of appeal comports with any of the requirements for a 60-1507 motion,

8

meaning McCarty's notice of appeal cannot be successfully converted to a 60-1507 motion. See K.S.A. 2020 Supp. 60-1507; Supreme Court Rule 183 (2020 Kan. S. Ct. R. 223).

The State also argues that the notice of appeal does not properly designate the ruling from which McCarty wishes to appeal. We can appreciate the State's argument given the wording of the notice, but a liberal construction of the notice of appeal indicates that McCarty seeks to appeal from the evidentiary hearing at which the district court revoked his probation. Part of the pro se notice of appeal reads: "Because McCarty did not have conflict free counsel at the time of the defendant's evidentiary hearing, he should be granted effective counsel." Admittedly, this statement is an argument that McCarty had ineffective assistance of counsel, but it also indicates he is appealing from the evidentiary hearing.

Next, the State argues that the notice of appeal is deficient because it does not indicate to which court McCarty is appealing. The State is correct as to this deficiency in the notice of appeal. But we must note that McCarty drafted his notice of appeal pro se, not with the assistance of counsel, and were we to dismiss McCarty's appeal he would be unable to obtain relief. See *Kelly*, 291 Kan. at 565 ("Pro se pleadings are liberally construed, giving effect to the pleading's content rather than the labels and forms used to articulate the defendant's arguments."). In the interest of justice, we decline to allow this deficiency to bar review of the merits of McCarty's claims, particularly in a criminal case, as there is really no question as to which appellate court McCarty seeks relief. See K.S.A. 2020 Supp. 22-3601(a), (b).

Finally, the State argues it has been prejudiced because McCarty raises issues not indicated in the notice of appeal or raises meritless ones. Practically speaking, however, nothing is required by the State upon receipt of the notice of appeal; rather, the State determines the issues on appeal by reading the docketing statement and brief filed by the

9

appellant. The briefs, not the notice of appeal, "'should list all of the issues to be argued by the parties and should contain the arguments and authorities for each issue. . . . Whether a party has detailed its arguments in the notice of appeal does not affect the State's practice or its appellate strategy.'" *State v. Wilkins*, 269 Kan. 256, 269, 7 P.3d 252 (2000) (quoting *State v. Boyd*, 268 Kan. 256, 606, 7 P.3d 252 [2000]); see Supreme Court Rule 6.02 (2020 Kan. S. Ct. R. 34) (content of appellant's brief); Supreme Court Rule 6.03 (2020 Kan. S. Ct. R. 35) (content of appellee's brief).

Because the State has not been prejudiced by the deficiencies in McCarty's pro so notice of appeal, we conclude we have jurisdiction to address the merits of McCarty's appeal.

II.    DID THE DISTRICT COURT ERR IN REVOKING MCCARTY'S PROBATION?

McCarty argues insufficient evidence supports the district court's finding that he violated the terms and conditions of probation, and he claims the district court abused its discretion by revoking his probation and imposing his underlying prison sentence.

A district court's decision to revoke probation usually involves two steps:  (1) a factual determination that the probationer has violated a condition of probation, and (2) a discretionary determination as to the appropriate disposition in light of the proved violations. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008).

   A.    *Sufficient facts support the district court's finding that McCarty violated the conditions of his probation.*

First, McCarty argues the district court erred in finding he violated the conditions of his probation because the evidence presented did not establish a violation by a preponderance of the evidence.

We review a district court's findings of fact to determine if those findings are supported by substantial competent evidence, and we review the district court's legal conclusions de novo. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). When reviewing the district court's factual findings, we do "'not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence.'" *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015).

The State bears the burden of establishing a probation violation by a preponderance of the evidence. See K.S.A. 2020 Supp. 22-3716(b)(2); *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006). A preponderance of the evidence means evidence that is "'of greater weight or more convincing than the evidence which is offered in opposition to it.'" *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008). When the commission of a new crime is alleged, a "[c]onviction for the act which allegedly violated the conditions of probation is not required" to satisfy the State's burden of proof. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016).

McCarty takes issue with T.J.'s "repeated attempts to escape further testimony while on the stand," arguing that such attempts led to a burden of proof issue. He claims the State failed to meet its burden of proof because "it offered nothing—such as physical evidence or law enforcement testimony—to tip the scale in its favor." We disagree.

All that is required to find McCarty violated his probation is that it is more convincing than not that McCarty battered T.J. that day, which is a lower evidentiary standard than that needed to sustain a conviction. See *In re B.D.-Y.*, 286 Kan. at 691. McCarty complains the State did not offer any law enforcement testimony or physical evidence. Yet even a *conviction* of the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

11

Therefore, if a conviction can be sustained without physical evidence, then so too can a finding that a probationer violated his probation be sustained by a preponderance of the evidence.

At the evidentiary hearing, T.J. testified multiple times that McCarty kicked her twice in the face. While McCarty denied these allegations, there is no dispute that the parties had a tumultuous past riddled with incidents just like this one. T.J. clearly did not want to testify, but her reasons for feeling this way and her demeanor on the stand are not for us to assess. The district court was present, and only it can make such assessments. See *Dern*, 303 Kan. at 392. Clearly, after weighing the evidence, the district court found it more convincing than not that McCarty kicked T.J. that day. The testimony presented was sufficient to support a finding that McCarty violated his probation by committing a new offense when he kicked T.J. twice in the face. The district court did not err in finding that McCarty violated his probation.

B.     *The district court did not err by imposing McCarty's underlying prison sentence.*

Next, McCarty argues the district court abused its discretion by imposing his underlying sentence after revoking his probation rather than giving him another chance on probation.

It is undisputed that McCarty was granted a dispositional departure to probation; thus, the district court had the discretion to revoke his probation and order the imposition of his underlying prison sentence for a single violation. See K.S.A. 2020 Supp. 22-3716(c)(7)(B). Because revocation was clearly within the discretion of the district court, unless it made a legal or factual error, we will set it aside only if no reasonable person could agree with it. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

We see nothing unreasonable in the district court's decision to impose McCarty's underlying prison sentence. McCarty claims ordering him to serve his underlying sentence was unreasonable because he needed treatment for his mental health issues. While it is true McCarty had mental health issues, his probation violation was one of the most egregious he could have committed—again battering his victim. The district court gave significant weight to the fact McCarty repeated the same acts against the same victim which led to his conviction and placement on probation in the first place. Given McCarty's criminal history of repeated domestic violence and because his acts constituted a new crime while on probation, the district court did not abuse its discretion by revoking his probation and imposing his underlying prison sentence as a reasonable person could easily agree with the district court. See 292 Kan. at 550. The facts in this case provided a reasonable basis for the district court to conclude that McCarty was no longer amenable to probation. The district court did not err.

III.    IS MCCARTY'S SENTENCE ILLEGAL?

Finally, McCarty claims his sentence is illegal due to his criminal history score being incorrectly calculated. Specifically, McCarty argues the district court erred in including his prior municipal court convictions in his criminal history because the State failed to meet its burden of proving that he had been represented by counsel for those convictions. He also argues the district court erred in double counting his misdemeanor domestic battery convictions.

An illegal sentence is a sentence imposed by a court that lacks jurisdiction; a sentence that does not conform to the applicable statutory provisions, either in character or the length of the punishment authorized; or a sentence that is ambiguous concerning the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which we exercise unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d

1068 (2019). The party asserting an illegal sentence bears the burden of proving some evidentiary basis of illegality. See *State v. Patterson*, 262 Kan. 481, 485-86, 939 P.2d 909 (1997).

The presentence investigation (PSI) report prepared for sentencing indicated McCarty had a criminal history score of B. McCarty's criminal history is lengthy—31 entries, several of which are unscored convictions. To receive a criminal history score of B, a defendant must have two adult convictions or juvenile adjudications for person felonies. K.S.A. 2020 Supp. 21-6809. Here, McCarty's criminal history score of B was based on the following prior Kansas convictions:

- Item 22: Battery—Bodily Harm—Domestic—07DV1054: municipal conviction from 2007, classified as a person felony via multiple misdemeanor conversion with items 27 and 30.
- Item 27: Battery—Bodily Harm—Domestic—10DV1507: municipal conviction from 2010, classified as a person felony via multiple misdemeanor conversion with items 22 and 30.
- Item 29: Domestic Battery—11CR3322: state conviction from 2011, classified as a person felony.
- Item 30: Domestic Battery—Physical Contact—17DV1092: municipal conviction from 2017, classified as a person felony via multiple misdemeanor conversion with items 22 and 27.

Three of the municipal violations were scored as person misdemeanors (items 22, 27, and 30), which were converted into a single person felony. The second person felony conviction used to elevate McCarty's criminal history score to B was his prior domestic battery conviction (item 29).

If the determination that any of these crimes are person felonies is in error, then McCarty's criminal history score would be reduced to either C (one person felony conviction) or G (one nonperson felony conviction and no person felony convictions). See K.S.A. 2020 Supp. 21-6809. Such a reduction in his criminal history score would also reduce his presumptive prison sentence. See K.S.A. 2020 Supp. 21-6804(a).

A.     *McCarty fails to allege facts requiring exclusion of his prior municipal court convictions from his criminal history.*

McCarty argues the district court erred in including his prior municipal court convictions in his criminal history because the State failed to meet its burden of proving that McCarty was represented by counsel for these convictions. Specifically, he argues the PSI report does not show that he had counsel in those municipal cases or that he waived the right to counsel. Thus, he maintains we must vacate his sentence and remand the case to recalculate his criminal history score.

In response, the State shotguns a plethora of procedural arguments which it contends bar our consideration of this claim: (1) McCarty lacks standing because he does not actually claim his sentence is illegal; (2) we lack subject matter jurisdiction because there is no relief we can grant McCarty; (3) McCarty abandoned any claim via inadequate briefing; (4) the equitable principle of laches prevents consideration of this issue because McCarty has never raised it before and "squander[s] the time and resources of this Court and the State"; and (5) the equitable doctrine of unclean hands prevents our review because McCarty seeks an advisory opinion by "raising of this non-issue for the first time on appeal." The State also disputes the merits of McCarty's illegal sentence claims.

Rather than wade into the morass of the State's procedural arguments, we choose instead to address the merits of McCarty's claim. See *State v. McAlister*, 310 Kan. 86, 90, 444 P.3d 923 (2019) ("K.S.A. 22-3504's statutory directive that an illegal sentence may

be corrected 'at any time' supersedes the normal procedural hurdles of res judicata and retroactivity."). Essentially, McCarty argues his sentence is illegal via a collateral attack of the constitutionality of his prior municipal court convictions. As we explain below, we agree with the State that McCarty's argument lacks merit, principally because McCarty does not actually claim his prior municipal convictions were uncounseled. Instead, McCarty merely *suggests* that his prior municipal court convictions used to calculate his criminal history *may* have been uncounseled.

"An uncounseled misdemeanor conviction obtained in violation of a person's Sixth Amendment right to counsel may not be collaterally used for sentence enhancement in a subsequent criminal proceeding." *State v. Long*, 43 Kan. App. 2d 328, Syl. ¶ 4, 255 P.2d 754 (2010). "At the sentencing hearing, the State bears the burden of proving the constitutional validity of prior convictions used to enhance a sentence." *State v. Jones*, 272 Kan. 674, 681, 35 P.3d 887 (2001). K.S.A. 2020 Supp. 21-6814 provides in relevant part:

> "(a) The offender's criminal history score shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.
> "(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history score.
> "(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet."

Here, McCarty admitted to both his criminal history and criminal history score as set forth in the PSI report at the sentencing hearing. See K.S.A. 2020 Supp. 21-6814(a). The following exchange occurred at McCarty's sentencing:

16

"THE COURT: Okay. Mr. McCarty, have you had the opportunity to review the Presentence Investigation Report with your attorney?

"[MCCARTY]: Yes, Your Honor.

"THE COURT: Did he explain to you how a criminal history score is calculated?

"[MCCARTY]: Yes, Your Honor.

"THE COURT: Did he go over with you the list of prior criminal offenses that are listed for you—

"[MCCARTY]: Yes.

"THE COURT: —which is fairly lengthy?

"He went over that with you?

"[MCCARTY]: Yes, Your Honor.

"THE COURT: Do you agree then that those prior offenses are accurately listed and that your criminal history score is accurately calculated at B?

"[MCCARTY]: Yes, Your Honor.

"THE COURT: And you understand that B is the next highest criminal history score?

"[MCCARTY]: Yes, Your Honor.

"THE COURT: Okay. The Court is going to find, without objection, that the criminal history score for this defendant is B."

In addition, McCarty did not notify the district court or the district attorney of any alleged error in his criminal history worksheet as required by K.S.A. 2020 Supp. 21-6814(c). Thus, it appears the State satisfied its burden of proof at the sentencing hearing regarding McCarty's criminal history in the manner set forth in K.S.A. 2020 Supp. 21-6814(b).

McCarty argues his admissions at sentencing are immaterial because the PSI report is silent as to whether his municipal convictions were counseled. He also argues that because he can raise an illegal sentence claim at any time, the State retains the burden to prove the validity of these convictions. For support, McCarty directs us to *State v. Obregon*, 309 Kan. 1267, 444 P.3d 331 (2019), which he claims stands for the proposition that it is the State's burden, not his, to prove the validity of these prior

17

municipal court convictions. *Obregon* involved the question of how to classify the defendant's prior Florida burglary conviction. The person/nonperson classification of this conviction turned on which version of the Florida burglary statute Obregon was convicted. The PSI report only listed the statute generally, and Obregon apparently never challenged his PSI report at sentencing. Our Supreme Court, while acknowledging that a PSI report "frequently can satisfy the State's burden absent defendant's objection," determined that "more is required when the summary does not indicate which version of the out-of-state offense the defendant committed." 309 Kan. at 1275. Our court expanded *Obregon*'s holding beyond situations where a prior conviction's classification is at issue to also include the question of whether the prior conviction should be listed in a defendant's criminal history at all. See *State v. Anderson*, No. 121,640, 2020 WL 6371059, at *4-5 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* November 30, 2020; *State v. McKoy*, No. 121,636, 2020 WL 5739730, at *2-3 (Kan. App. 2020) (unpublished opinion); *State v. Arnold*, No. 121,542, 2020 WL 5740900, at *2 (Kan. App. 2020) (unpublished opinion).

The cases above can be distinguished on the grounds that they involve issues that turned on which version of the relevant statutes the defendants had previously been convicted—questions fundamentally different than the one before us. A PSI report is required to list prior convictions, but a PSI report is not required to show whether a defendant had the benefit of counsel in the case resulting in the prior conviction. See K.S.A. 2020 Supp. 21-6813(b). Here, McCarty is challenging the validity of the underlying proceedings supporting his prior convictions.

Our Supreme Court has held that a presumption of validity clings to the prior conviction so that in a collateral attack it is the defendant, not the State, who bears the burden of overcoming this presumption. *Patterson*, 262 Kan. at 485. The *Patterson* court explained this principle had been applied in other postconviction proceedings that raised other constitutional rights and, for Patterson to obtain a right to a hearing, he had to

include some evidentiary basis for his claim other than mere conclusory allegations. 262 Kan. at 485; see *Parke v. Raley*, 506 U.S. 20, 31, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992) ("Our precedents make clear, however, that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant."). While it is true that an illegal sentence may be corrected "at any time while the defendant is serving such sentence," including on appeal from the revocation of a defendant's probation, there must be some showing that the sentence is, in fact, illegal. K.S.A. 2020 Supp. 22-3504(a); *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016); see *State v. Neal*, 292 Kan. 625, 632, 258 P.3d 365 (2011) (defendant alleged in "'sworn to'" motion "he was never advised of his right to counsel in either of the [municipal] cases nor did he ever waive it"). And "a defendant who collaterally challenges the constitutional validity of prior convictions used to enhance his or her sentence, based on a claim of the absence of counsel, has the burden to show he or she did not have the benefit of counsel at the prior convictions." *Jones*, 272 Kan. at 681; *Patterson*, 262 Kan. at 490. If the defendant fails to meet this burden, the appellate court presumes the enhanced sentence "to be regular and valid." *Jones*, 272 Kan. at 681.

Although not cited to us by either party, we note that two other panels of our court have addressed this question with opposite results. In *State v. Roberts*, No. 121,682, 2020 WL 5268197, at *4 (Kan. App. 2020) (unpublished opinion), *rev. granted* 312 Kan. ___ (January 28, 2021), the defendant raised the identical issue, and the panel held that the defendant had the burden to provide some evidence beyond mere allegations to support his motion to correct an illegal sentence. In *State v. Beltran*, No. 121,200, 2020 WL 7409937, at *3-4 (Kan. App. 2020) (unpublished opinion), the panel took the opposite tack, relying on *Obregon*, and our cases applying it in different contexts, to essentially agree with McCarty's position and hold that the defendant's sentence had to be vacated so a determination could be made as to whether the prior convictions at issue had been counseled. Given our analysis above, we obviously disagree with the *Beltran* panel's

19

holding and rationale. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) (one Court of Appeals panel not bound by another).

Here, McCarty has made no attempt to assert that he received an illegal sentence or to show how his sentence was illegal. He merely alleges the State did not meet its burden before the district court. Moreover, he never directly appealed his sentence and, in his present collateral attack on his prior municipal court convictions, McCarty bears the burden to overcome the presumption of validity which attaches to those prior convictions. Instead, McCarty only suggests a possible scenario under which his sentence may have been illegal. Given such briefing, we conclude McCarty has failed to make a colorable claim that his sentences were illegal under K.S.A. 2020 Supp. 22-3504(c)(1). We dismiss this part of McCarty's illegal sentence claim.

B. *McCarty's misdemeanor domestic battery convictions were not double counted.*

Second, McCarty argues the district court erred in double counting his misdemeanor domestic battery convictions. Specifically, he argues the district court erroneously included two prior misdemeanor domestic battery convictions in his criminal history which were used again to elevate another prior domestic battery conviction from a misdemeanor to a felony, resulting in a higher criminal history score and making his sentence illegal.

According to his PSI report, McCarty has a single prior person felony domestic battery conviction in 2011 and three prior person misdemeanor domestic batteries. K.S.A. 2011 Supp. 21-5414(b)(3) states: "Domestic battery is a . . . person felony, if, within five years immediately preceding commission of the crime, an offender is convicted of domestic battery a third or subsequent time." Pursuant to this rule, McCarty's two prior person misdemeanor domestic battery convictions from 2007 and 2010 were used to

20

enhance his third conviction for domestic battery in 2011 from a person misdemeanor to a person felony. Additionally, K.S.A. 2017 Supp. 21-6811(a) requires that "[e]very three prior adult convictions . . . of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction . . . of a person felony for criminal history purposes." As a result, McCarty's prior person misdemeanor domestic battery convictions from 2007, 2010, and 2017 were converted into a single person felony.

McCarty argues that because his 2007 and 2010 domestic battery convictions were used to elevate his 2011 domestic battery conviction from a misdemeanor to a felony, they cannot be included in his criminal history and then be added with a third domestic battery from 2017 and converted to a single person felony to be used in the calculation of his criminal history score.

K.S.A. 2017 Supp. 21-6810(d)(10) controls this issue and limits how prior convictions may be used:

> "Prior convictions of any crime shall not be counted in determining the criminal history category if they *enhance the severity level, elevate the classification from misdemeanor to felony, or are elements of the present crime of conviction*. Except as otherwise provided, all other prior convictions will be considered and scored." (Emphasis added.)

McCarty contends this statute is ambiguous and the rule of lenity should be applied to his benefit. He attempts to persuade us that the phrase "present crime of conviction," which appears to modify the preceding clauses, only modifies the phrase "or are elements" and does not modify the other two clauses—"enhance the severity level" or "elevate the classification from misdemeanor to felony." Under McCarty's proposed construction, his 2007 and 2010 prior misdemeanor domestic battery convictions could not be included in his criminal history because they were also used to enhance his 2011

21

domestic battery conviction from a misdemeanor to a felony. McCarty's construction would also have the effect of not allowing those same prior misdemeanor domestic battery convictions to be aggregated with his 2017 misdemeanor domestic battery conviction to create another prior person felony conviction. See K.S.A. 2017 Supp. 21-6811(a) (three person misdemeanors aggregated to create person felony in criminal history).

McCarty's interpretation leads to absurd results. If we agreed with McCarty, then K.S.A. 2017 Supp. 21-6810(d)(10) would read: "Prior convictions of any crime shall not be counted in determining the criminal history category if they enhance the severity level." Or: "Prior convictions of any crime shall not be counted in determining the criminal history category if they elevate the classification for misdemeanor to felony." Or: "Prior convictions of any crime shall not be counted in determining the criminal history category if they are elements of the present crime of conviction." This parsing leaves us with two sentence fragments and one sentence. McCarty attempts to repair this absurdity by inserting "any offense" into both fragments. However, we merely interpret statutes; we do not rewrite them.

Since 2004, we have consistently rejected McCarty's argument and held that two misdemeanor domestic battery convictions can be used to both elevate a third domestic battery to a felony and be aggregated with another person misdemeanor to create a person felony. Such use of a defendant's prior convictions is permissible because none of the prior convictions were used to elevate the *present crime* of conviction from a misdemeanor to a felony; they were used to elevate a *prior crime* of conviction. See *State v. Wilmore*, 57 Kan. App. 2d 469, 475-76, 453 P.3d 1192 (2019), *rev. denied* 311 Kan. 1050 (2020); *Krebs v. State*, No. 120,367, 2020 WL 5993923, at *6 (Kan. App. 2020) (unpublished opinion); *State v. Bishop*, No. 119,961, 2019 WL 6973428, at *4 (Kan. App. 2019) (unpublished opinion); *State v. Higbee*, No. 119,260, 2019 WL 6794500, at *4 (Kan. App. 2019) (unpublished opinion), *rev. denied* 312 Kan. ___ (August 31,

22

2020); *State v. Herrera*, No. 119,427, 2019 WL 2237237, at *2 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1048 (2020); *State v. Omar-Cruz*, No. 110,698, 2014 WL 6909677, at *5 (Kan. App. 2014) (unpublished opinion); *State v. Smith*, No. 107,266, 2013 WL 1339891, at *3 (Kan. App. 2013) (unpublished opinion); *State v. Temmen*, No. 104,326, 2011 WL 1878141, at *2 (Kan. App. 2011) (unpublished opinion); *State v. Smith*, No. 92,312, 2005 WL 1089054, at *2 (Kan. App. 2005) (unpublished opinion*); State v. Grant*, No. 90,042, 2004 WL 719257, at *3-4 (Kan. App. 2004) (unpublished opinion).

McCarty also tries to distance this case from *State v. Fowler*, 311 Kan. 136, 457 P.3d 927 (2020), where our Supreme Court addressed similar claims of double counting involving prior misdemeanor domestic battery convictions. While McCarty is correct that the case is not directly on point, the Kansas Supreme Court's holding is significant because it states that the "use of the same two prior misdemeanor domestic batteries both to calculate a defendant's criminal history for his or her base sentence on a *current* primary grid crime and to elevate a *current* domestic battery to a felony does not violate K.S.A. 2015 Supp. 21-6810(d)(9)'s restriction on double counting." (Emphases added.) 311 Kan. 136, Syl. ¶ 2. Put another way, even if a domestic battery conviction is a present crime of conviction and has been elevated to a felony because of two prior misdemeanor domestic battery convictions, those two prior misdemeanor domestic battery convictions can still be included in the defendant's criminal history without violating the double counting rule. As K.S.A. 2015 Supp. 21-6810(d)(9)'s double counting restriction mirrors K.S.A. 2017 Supp. 21-6810(d)(10)'s double counting restriction, *Fowler* is applicable here. Compare K.S.A. 2015 Supp. 21-6810(d)(9) with K.S.A. 2017 Supp. 21-6810(d)(10).

Here, two of McCarty's prior misdemeanor domestic battery convictions were used to elevate another *prior* domestic battery conviction from a misdemeanor to a felony, and then those same two misdemeanor domestic battery convictions plus a third

misdemeanor domestic battery conviction were converted to a person felony in the calculation of McCarty's criminal history score for his current sentencing. This is permissible under *Fowler* and our court's prior precedents because both the conversion and the enhancement only involve *prior* convictions. McCarty's suggested interpretation of K.S.A. 2017 Supp. 21-6810(d)(10) cannot be harmonized with the remaining language from the same subsection of the statute which requires that "all other prior convictions will be considered and scored." See *Wilmore*, 57 Kan. App. 2d at 476. The Kansas Sentencing Guidelines Act includes no other provision that prevents McCarty's first two domestic battery convictions from being counted as part of his criminal history.

The district court did not violate K.S.A. 2017 Supp. 21-6810(d)(10)'s double counting prohibition. Based upon the record before us, McCarty's criminal history score was correctly calculated as B and his sentence is not illegal.

Affirmed in part and dismissed in part.