NOT DESIGNATED FOR PUBLICATION

No. 122,478

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID A. LLAMAS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed May 14, 2021. Affirmed in part and dismissed in part.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

PER CURIAM: In April 2018, David A. Llamas pled guilty to one count of interference with a law enforcement officer. The district court imposed 12 months' probation, with an underlying 11-month prison sentence. Before Llamas completed probation, the State filed two warrants alleging that he violated his probation in numerous ways. He admitted to the allegations contained in the first warrant and did not contest those contained in the second warrant. After a hearing, the district court revoked Llamas' probation and imposed the underlying prison sentence. Llamas appeals, arguing that the State failed to prove his criminal history score. He also argues that the district court

1

abused its discretion when it revoked his probation. Upon review, we conclude that Llamas fails to make a colorable claim of an illegal sentence, and therefore dismiss his appeal on that issue. We also find that the district court did not abuse its discretion when revoking Llamas' probation, and thus affirm its decision.

FACTS

In April 2018, the State charged Llamas with one count of interference with a law enforcement officer, a severity level 9 nonperson felony. In October, Llamas pled guilty to the charge as his part of a plea agreement with the State. In exchange for pleading guilty, the State agreed to recommend the low number in the grid box and also recommend the district court follow the presumption of probation. The plea agreement indicated that the case would run consecutive to any others, including Sedgwick County case 14CR296. At the plea hearing, the district court accepted Llamas' plea and found him guilty. The presentence investigation report (PSI) and criminal history worksheet showed that Llamas had a criminal history score of C.

The following month, the district court held the sentencing hearing. During the hearing, the district court asked if Llamas agreed to the accuracy of the entries contained in the PSI, and he agreed it was accurate. The district court then found that Llamas' criminal history score was C, and both parties agreed that was the correct criminal history score. A special rule applied to Llamas' case because he committed the crime while on postrelease supervision for a felony in Sedgwick County case 14CR296. Under the special rule, if a crime is committed while a person is on postrelease supervision for a felony, the sentencing court must run the sentence for the new crime consecutive to the prior sentence. Additionally, in such circumstances the district court *may*, in its discretion, sentence the offender to imprisonment for the new conviction even when the new crime of conviction otherwise presumes a nonprison sentence. Importantly,

2

imposition of a prison sentence for the new crime under these circumstances does not constitute a departure. See K.S.A. 2020 Supp. 21-6604(f)(1).

Despite the special rule, both parties asked the district court to follow the terms of the plea agreement and place Llamas on probation. Ultimately, the district court followed the terms of the plea agreement and sentenced Llamas to 12 months' probation with an underlying 11-month prison term. As required by the special rule, the district court also ordered that Llamas' sentence in this case run consecutive with case 14CR296.

On October 10, 2019, Llamas admitted to violating his probation after his urinalysis test showed he tested positive for methamphetamine, cocaine, and alcohol. He waived his rights to a contested probation violation hearing and agreed to serve a 48-hour jail sanction. Less than a week later, the State filed a warrant for Llamas' arrest. In addition to the urinalysis violations, the State alleged that Llamas violated his probation when he failed to report for his 48-hour jail sanction, when he operated a motor vehicle without a valid license, and when he left the probation office before seeing his probation officer. The following month, the State issued a second warrant, alleging that Llamas violated his probation by committing new crimes. Specifically, the State alleged that Llamas possessed a firearm, committed the offense of criminal possession of a firearm by a convicted felon, defaced the serial number of a firearm, evaded police, possessed drug paraphernalia, and failed to signal while driving.

In December, prior to his probation violation hearing, Llamas filed a motion for reconsideration. Llamas requested that the district court modify or extend his probation and appoint a new probation officer. He also requested that the district court consider house arrest, a fine, or community service. Additionally, Llamas asked the district court to allow time served as a jail sanction, or, alternatively, work release as a sanction.

In January 2020, the district court held a hearing regarding Llamas' probation violations. At the hearing, Llamas admitted the allegations contained in the October warrant did not contest the allegations contained in the November warrant, and he waived his right to an evidentiary hearing. The State then reminded the court that Llamas originally committed the present crime while on postrelease supervision. The State was particularly concerned about Llamas possessing a firearm because he was a member of a Wichita gang. That, combined with his other violations, made Llamas a serious safety concern in the State's opinion. Accordingly, the State recommended that the district court bypass intermediate sanctions and impose Llamas' underlying sentence.

Llamas responded by asking the district court to reinstate or extend his probation. Llamas explained that he had a serious addiction issue but was taking steps to address it. He told the district court that he reported to jail to serve his 48-hour sanction, but he arrived late so the jail would not let him in. Llamas said the next day he went to the probation office to meet with his probation officer but left before seeing his probation officer because he had waited over an hour. After that, he stopped reporting to probation because he was afraid.

Llamas also presented a drug and alcohol evaluation, which indicated that he needed inpatient treatment. Llamas told the district court he wished to complete treatment and change his lifestyle. He felt that going to prison would have a negative impact on his addiction issues because of the availability of drugs in the prison. Llamas also noted the support he had from family members and said they hoped he would be sentenced to treatment. He then disputed the State's assertion that he was a safety risk and asked the district court to give him another chance on probation.

After hearing statements from the parties, the district court found that the mere threat of going to prison was not an adequate deterrent for Llamas to refrain from probation violations. The district court then summarized the violations Llamas allegedly

4

committed before it found that he was not amenable to further probation. The district court also found "that there's been sanctions imposed by the [intensive supervision officer], as well as this was a special rule case, and presumptive prison because of that special rule, at the time that you were sentenced. Additionally, you committed numerous new offenses while being on probation." Ultimately, the district court revoked Llamas' probation and imposed his underlying sentence.

Llamas has timely appealed from the district court's rulings.

ANALYSIS

*Use of municipal court convictions in determining Llamas' criminal history score*

In his first issue on appeal, Llamas argues the State failed to prove that he was represented by counsel during his prior municipal adjudications that were used to enhance his criminal history score. Accordingly, he contends the district court erred by including the municipal convictions in his criminal history score. The State responds by arguing, in the alternative, that the issue is either moot, or that Llamas' claim is abandoned and meritless.

The State first suggests that the case is moot because Llamas finished serving the underlying prison portion of his sentence. Additionally, they contend that, since his crimes were committed in the spring of 2018, his postrelease supervision period was set as a matter of law at 12 months by K.S.A. 2017 Supp. 22-3717(d)(1)(C). Thus, the State argues that because the period of postrelease cannot be impacted by a decision, any judgment this court would enter regarding Llamas' criminal history and sentencing would be ineffectual for any purpose.

5

In his reply brief, Llamas responds by arguing that the State failed to make a prima facie showing of mootness. He also argues the State fails to acknowledge the recent opinions issued by our Supreme Court on the issue of mootness. In the alternative, Llamas argues the case is not moot because he needs a decision on the merits to file a malpractice claim against the attorney that represented him in district court.

"A case is moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."'" *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2019) (quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 [2012]). Cases that are moot are subject to dismissal. *Roat*, 311 Kan. at 584. Whether a case is moot is reviewed de novo. 311 Kan. at 590. The State, as the party asserting the case is moot, bears the initial burden of establishing that the case is moot. See 311 Kan. at 593.

The *Roat* court also held that the State can satisfy its burden to establish a prima facie showing of mootness by showing that the defendant has "fully completed the terms and conditions of his or her sentence." 311 Kan. at 593. The State is correct that on September 19, 2020, Llamas completed serving the incarceration portion of his sentence and began serving postrelease supervision. To evidence this, the State filed a notice of change in custodial status in accordance with Supreme Court Rule 2.042 (2021 Kan. S. Ct. R. 18).

Llamas does not refute the information contained in the notice of change in custodial status. Instead, he argues that he "is still subject to the 'terms and conditions of his sentence' because he is still serving postrelease." Llamas is correct that an individual on postrelease supervision is "'under a sentence.'" *State v. Lehman*, 308 Kan. 1089, 1098, 427 P.3d 840 (2018).

In *State v. Castle*, 59 Kan. App. 2d. 39, 477 P.3d 266 (2020), the defendant argued the precisely same thing. In response, our court concluded:

"But the fact that Castle is on postrelease supervision does not keep his appeal challenging his criminal history score from being moot because a defendant's criminal history score does not affect the mandatory term of postrelease supervision.

"Moreover, as the State asserts in its brief, this court cannot grant Castle any meaningful relief in this appeal. Even if this court agreed with Castle that the district court erred in calculating his criminal history score and remanded for resentencing under a criminal history score that would allow for presumptive probation, the district court could not impose probation because Castle has served his underlying sentence.

"In sum, the State has provided reliable evidence to show that Castle is no longer in prison and is on postrelease supervision. Castle makes no claim that his appeal challenging his criminal history score has an impact on his current or future rights. We are unable to grant Castle any meaningful relief in this appeal and the only judgment that could be entered would be ineffectual for any purpose. Under these circumstances, we dismiss Castle's appeal as moot. [Citations omitted.]" 59 Kan. App. 2d at 48.

But the case before us is distinguishable from *Castle* because Llamas argues that a decision would make an impact on his future rights because he needs a decision on the merits to pursue a malpractice claim against the attorney who represented him in district court. The *Roat* court held that a final "determination of mootness must . . . include analysis of whether an appellate judgment on the merits would have meaningful consequences for any purpose, including future implications." 311 Kan. at 592-93. Additionally, the *Roat* court held that "[t]he preservation of rights for future litigation is an interest that may preserve an appeal from dismissal based on mootness." 311 Kan. at 594.

Unlike in *Roat*, Llamas articulates the factual legal bases upon which he would make his malpractice claim were he to be successful on appeal. See 311 Kan. at 596-98. As such, we are not left to "put flesh onto the skeleton of a hypothetical malpractice

7

claim." 311 Kan. at 597. Thus, we find that Llamas' appeal on this issue is not moot, and we will address the merits of his argument.

In support of his first claim, Llamas argues that "[t]he district court erred by including municipal convictions in Mr. Llamas' criminal-history score because the State failed to prove by a preponderance of evidence that those municipal convictions were not obtained in violation of Mr. Llamas' Sixth Amendment rights."

The statute pertaining to a defendant's criminal history score states the following:

"(a) The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.

"(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.

"(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error. The state shall have the burden of proving the disputed portion of the offender's criminal history. The sentencing judge shall allow the state reasonable time to produce evidence to establish its burden of proof. If the offender later challenges such offender's criminal history, which has been previously established, the burden of proof shall shift to the offender to prove such offender's criminal history by a preponderance of the evidence." K.S.A. 2020 Supp. 21-6814.

Here, the PSI and criminal history worksheet contained 27 prior convictions, the vast majority of which were unscored adult misdemeanors. However, the report also contained four previous convictions for battery and a conviction for trafficking contraband in a correctional institution. Three of the battery convictions, all municipal court convictions, were converted into an adult conviction for a person felony. See

8

K.S.A. 2020 Supp. 21-6811(a). Paired with his conviction for trafficking contraband, which was an adult nonperson felony, Llamas' PSI and criminal history worksheet justified a C criminal history score. See K.S.A. 2020 Supp. 21-5914; see also K.S.A. 2020 Supp. 21-6809 (criminal history categories in scale).

During the sentencing hearing, the district court asked Llamas whether he agreed to the accuracy of the entries contained in the PSI or if he had any challenges. Llamas responded by telling the district court, "I agree with them." The district court then stated that Llamas had a criminal history score of C and asked the parties whether they agreed. The State agreed, as did Llamas.

Accordingly, Llamas admitted his criminal history as provided for in K.S.A. 2020 Supp. 21-6814(a). He also failed to notify the district court or the State of any alleged errors in the criminal history worksheets as required by K.S.A. 2020 Supp. 21-6814(c). Thus, the State satisfied its burden at the sentencing hearing regarding Llamas' criminal history score in accordance with K.S.A. 2020 Supp. 21-6814(b).

Since the State satisfied its initial burden under the statute, the burden shifts to Llamas to prove his subsequent challenge to his criminal history score by a preponderance of the evidence, as set forth in K.S.A. 2020 Supp. 21-6814(c). He has not satisfied this burden. In fact, Llamas fails to set forth any evidence, or even argue, that he was not represented by counsel in his municipal court cases.

Under K.S.A. 2020 Supp. 22-3504(a), a "court may correct an illegal sentence at any time while the defendant is serving such sentence." In *State v. Dickey*, 305 Kan. 217, 219-20, 380 P.3d 230 (2016), our Supreme Court held that a defendant can challenge their criminal history score on appeal after their probation has been revoked. K.S.A. 2020 Supp. 22-3504(c)(1) states that an "'[i]llegal sentence' means a sentence: Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision,

9

either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced."

In *State v. Patterson*, 262 Kan. 481, Syl. ¶ 1, 939 P.2d 909 (1997), our Supreme Court held that a defendant who collaterally challenges the use of a prior conviction to enhance their sentence has the burden to show that they did not have the benefit of counsel at the prior conviction and, absent such a showing, the enhanced sentence is presumed to be regular and valid.

Here, Llamas has not asserted that he actually received illegal sentences or even show how his sentences were allegedly illegal. He fails to make even conclusory allegations of illegality. Instead, he simply posits a *possible* scenario under which his sentences *might* have been illegal. Because of these omissions, we conclude that Llamas has failed to make a colorable claim that his sentences were illegal under K.S.A. 2020 Supp. 22-3504(c)(1). Under the circumstances, we dismiss this issue in his appeal.

*The district court's revocation of Llamas' probation*

In his second point on appeal, Llamas argues the district court abused its discretion in revoking his probation and imposing his underlying sentence. He contends that the district court should have applied any of its available array of intermediate sanctions, specifically including treatment programs, instead of sending him to prison. Llamas also argues that, alternatively, the district could have modified or extended his probation.

The State responds by arguing that the issue is moot. Alternatively, the State argues that Llamas is not entitled to relief on the issue.

As we have previously noted: "A case is moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that

10

could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."'" *Roat*, 311 Kan. at 584 (quoting *Montgomery*, 295 Kan. at 840-41). Cases that are moot are subject to dismissal. *Roat*, 311 Kan. at 584. Whether a case is moot is reviewed de novo. 311 Kan. at 590. The State, as the party asserting the case is moot, bears the initial burden of establishing that the case is moot. See 311 Kan. at 593.

If we would be satisfied with the evidence the State presented to demonstrate that Llamas completed his sentence, then his abuse of discretion issue is moot and he is not entitled to relief. See *Castle*, 59 Kan. App. 2d at 48. But, as noted above, since we have already found that Llamas' appeal is not moot, we will proceed to fully consider his second issue.

As an initial matter, Llamas claims that the district court's authority in the event of probation violations is defined by the 2017 version of K.S.A. 22-3716. The basis for Llamas' argument is our Supreme Court's decision in *State v. Coleman*, 311 Kan. 332, 460 P.3d 828 (2020). There, Coleman pleaded guilty to unlawful possession of a controlled substance in 2013. He later pleaded no contest to a new charge of unlawful possession of a controlled substance as well as no contest to another case involving aggravated failure to appear in 2015. The district court granted Coleman's request for a dispositional departure in all three cases and sentenced Coleman to probation.

The district court ultimately revoked Coleman's probation without exhausting all intermediate sanctions, reasoning that it had the authority to do so under K.S.A. 2017 Supp. 22-3716(c)(9)(B), which contained an exception that allowed a district court to bypass intermediate sanctions when a defendant's probation had originally been granted as the result of a dispositional departure. 311 Kan. at 333-34. The dispositional departure exception that the district court relied on became effective on July 1, 2017. See L. 2017, ch. 92, § 8. Despite the language contained in K.S.A. 2017 Supp. 22-3716(c)(12), which appeared to apply the statutory change to crimes committed after July 1, 2013, our

Supreme Court concluded that the dispositional departure exception could not be applied retroactively, only prospectively after July 1, 2017. 311 Kan. at 337.

Llamas asserts that our Supreme Court's opinion in *Coleman* meant that "absent a concurrently enacted and specific retroactivity provision—the applicable sanctions a district court may impose on a probationer are those that were in effect at the time the accused committed the crimes for which he was placed on probation." Thus, he argues that the 2017 version of the statute applies here because "Llamas committed his underlying offenses in April 2018. And, though a retroactivity provision remains in K.S.A. 2019 Supp. 22-3716(c), it is the same retroactivity provision that the *Coleman* court concluded was meant to apply to the 2014 amendments." The State agrees.

The distinction matters because the district court relied in part on the dispositional departure exception in K.S.A. 2017 Supp. 22-3716(c)(9)(B) when revoking Llamas' probation. Llamas asserts that the district court erred by relying on that subsection of the statute because it was inapplicable to him, meaning the district court erred as a matter of law. Again, the State agrees.

An appellate court reviews the district court's revocation of an offender's probation for an abuse of discretion. *Coleman*, 311 Kan. at 334. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Llamas, as the party asserting the district court abused its discretion, bears the burden of showing the abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Both parties are correct in their assertions. The dispositional departure exception in K.S.A. 2017 Supp. 22-3716(c)(9)(B) allowed a district court to revoke a defendant's probation without have previously imposed a sanction if "the probation . . . was originally

granted as the result of a dispositional departure granted by the sentencing court pursuant to K.S.A. 2017 Supp. 21-6815, and amendments thereto." But Llamas' probation was not the result of a dispositional departure, and the district court mistakenly cited that section in support of its decision.

Instead, as we have noted, a special rule applied to Llamas' case because he committed his original crime while on postrelease supervision in a prior Sedgwick County case. The special rule meant that Llamas' sentence had to run consecutively to the prior case. See K.S.A. 2017 Supp. 21-6606(c). But the special rule did not change Llamas' presumptive sentence, which was probation based on his criminal history score of C and the fact that interference with a law enforcement officer is a severity level 9 nonperson felony. K.S.A. 2017 Supp. 21-5904(a)(3), (b)(5)(A); see also K.S.A. 2017 Supp. 21-6804(a).

The special rule did, however, give the district court discretion to sentence Llamas to prison even if the presumptive sentence for his new conviction was a nonprison sentence. Had the district court decided to sentence Llamas to prison, it would not have constituted a departure. K.S.A. 2017 Supp. 21-6604(f)(1). But, instead of sentencing Llamas' to imprisonment, the district court sentenced him to probation. Thus, Llamas sentence was not the result of a dispositional departure, and the district court erred by referencing the statue when it revoked Llamas' probation.

However, the district court also relied on another statutory basis when revoking Llamas' probation. Specifically, the district court relied on the fact that Llamas committed new crimes while on probation. Under K.S.A. 2017 Supp. 22-3716(c)(8)(A) probation can be revoked based on the commission of another crime without the defendant even being charged with the crime or even if charged the probationer is later acquitted of the crime. Proof beyond a reasonable doubt to support a criminal conviction is not necessary to support an order revoking probation. *State v. Rasler*, 216 Kan. 292,

295, 532 P.2d 1077 (1975). In this case, Llamas did not contest that he violated probation by committing several new crimes while on probation.

Llamas acknowledges that K.S.A. 2017 Supp. 22-3716(c)(8)(A) permitted the district court to impose his underlying sentence without having previously imposed a sanction. But he argues that no reasonable person would agree with the district court's decision to impose his original sentence.

To support his argument, Llamas argues addiction was the root of the problems in his life. He contends that prison would not benefit him and that he was trying to take advantage of his opportunity to succeed with treatment. He also argues that continuing his probation would have been consistent with the Legislature's goals when enacting the graduated sanctions scheme. Moreover, he points to his family's desire for him to be placed on treatment as another reason the district court's decision was unreasonable. Llamas' argument is unconvincing.

Llamas claims that prison did not benefit him in the past because he found it harder to refrain from drug use inside prison. However, his urinalysis test showed that he had trouble refraining from drug use outside of prison as well. After he admitted to testing positive for drugs in his urinalysis sample, the district court gave Llamas an opportunity to serve a 48-hour jail sanction and continue his probation. Llamas did not take advantage of that opportunity.

Additionally, after failing to serve his jail sanction, Llamas disregarded the conditions of his probation. He failed to meet with his probation officer, fled from police, possessed a weapon, defaced the serial number on the weapon, possessed drug paraphernalia, and failed to signal while driving. After summarizing Llamas' violations, the district court stated:

14

"With that being said, the Court makes a finding that you're not amenable to probation. You've been given an opportunity in this case. You are not unfamiliar with the system or the process. You were given an opportunity in this case and you didn't take advantage of it. In fact, on multiple occasions you are in violation—serious violations of the terms and conditions of probation."

The district court's reliance on K.S.A. 2017 Supp. 22-3716(c)(8(A) to revoke Llamas' probation was reasonable. Llamas committed new crimes while on probation and violated his probation in numerous other ways. Though other intermediate sanctions were available to the district court, none were required.

Moreover, any error the district court made when referencing the dispositional departure exception in K.S.A. 2017 Supp. 22-3716(c)(9)(B) was harmless. See K.S.A. 2017 Supp. 60-261; *State v. Volle*, No. 115,354, 2016 WL 7429457, at *4 (Kan. App. 2016) (unpublished opinion) (applying K.S.A. 60-261 harmless error standard in probation revocation case). Here, the State, as the party benefitting from the rule, demonstrated that there is no reasonable possibility the error affected the outcome of the case in light of the entire record. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

The district court's ruling clearly reflects that it relied on two statutory provisions to revoke Llamas' probation. Both statutory provisions, standing alone, gave the district court the authority to revoke Llamas probation. See K.S.A. 2017 Supp. 22-3716(c)(8)(A), (c)(9)(B). The district court's reliance on its mistaken finding that it had previously granted Llamas a dispositional departure was certainly erroneous, but the error was harmless. Alternatively, the district court had clear authority to revoke Llamas' probation after he committed new crimes. The district court chose to do so, and its decision was not unreasonable.

15

In sum, we find that the issues raised by Llamas are not moot, but on the merits of his arguments we affirm the district court's judgment. Despite erring when referencing an inapplicable statutory provision, the district court's error was harmless in light of the record as a whole. Additionally, we find that the district court's decision to revoke Llamas' probation instead of imposing other intermediate sanctions was not unreasonable, and thus the district court did not abuse its discretion.

Affirmed in part and dismissed in part.