NOT DESIGNATED FOR PUBLICATION

No. 122,736

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COOKEY LEE PHILLIPS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed November 12, 2021. Affirmed in part, vacated in part, and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.


PER CURIAM: Cookey Lee Phillips appeals his convictions for two counts of aggravated robbery, in violation of K.S.A. 2013 Supp. 21-5420(b)(1). He first argues that the trial court violated his speedy trial rights. He argues that the trial court erred in interpreting K.S.A. 2018 Supp. 22-3402(g) and erred in finding that the violation of Phillips' right to be present was harmless error. On the other hand, the State correctly argues that the trial court's statutory interpretation of K.S.A. 2018 Supp. 22-3402(g) was bound by a Supreme Court precedent. Also, the State correctly contends that the evidence

1

supported the trial court's fact-findings. Because Phillips' absence at the continuance hearings did not affect the outcome of his case, we affirm.

Next, Phillips argues that insufficient evidence supports his convictions. He argues that because the smoke shop employees did not identify him, the jury lacked sufficient evidence to conclude that he was the person who robbed the smoke shops. Nevertheless, the State argues that Phillips' nephews testified that he robbed the shops and their testimony, along with physical evidence recovered by police, was sufficient to convict Phillips. Because we conclude that the evidence was sufficient for a reasonable jury to find Phillips guilty beyond a reasonable doubt, we affirm.

Lastly, Phillips argues that, even if his convictions are valid, he is serving an illegal sentence. He claims his sentence is illegal because the presentence investigation (PSI) report does not have enough information to conclude that his 2002 conviction for fleeing or eluding law enforcement was a felony. The State argues that remand and resentencing is not appropriate because Phillips does not challenge his sentence as illegal and because Phillips did not object to his criminal history score at sentencing.

At sentencing, the State has the burden to prove Phillips' criminal history by a preponderance of the evidence. *State v. Obregon*, 309 Kan. 1267, 1275-76, 444 P.3d 331 (2019). A review of this record reveals that the State has failed to meet this burden because we do not know from the record whether Phillips' 2002 fleeing and eluding conviction was a misdemeanor or a felony. Thus, we vacate his sentence and remand this case to the trial court with directions to determine if Phillips' 2002 fleeing and eluding conviction was properly classified for criminal history purposes. If Phillips' 2002 fleeing and eluding conviction was not properly classified, the trial court is directed to resentence Phillips with the correct criminal history.

Thus, we affirm in part, vacate in part, and remand with directions.

FACTS

In August 2013, Phillips and his nephew, Tyler Phillips, robbed Tom's Super Shop in Wichita, Kansas. Another of Phillips' nephews, Georgio Phillips, served as the getaway driver. In September 2013, Tyler, Georgio, and a third nephew, Jarvis Phillips, went to Tee Pee's Smoke Shop with Phillips. Phillips and Tyler went in and robbed the shop. Donnette Montgomery, the sole employee at Tee Pee's Smoke Shop, called 911.

Within 15 minutes, Wichita police officers stopped a tan Suburban matching the description of the getaway car. Phillips was in the Suburban with Georgio, Jarvis, and Tyler. They were still sitting in the same seats they were in when they left the smoke shop. Police found a wig, a hat, several cigarette cartons, and a pellet gun in the Suburban and found $297 in Phillips' pocket, an amount consistent with the money stolen from the smoke shop that day.

The State charged Phillips with two counts of aggravated robbery. Phillips waived preliminary hearing and formal arraignment on October 24, 2013. Trial was set for December 16, 2013, or 53 days later. Defense counsel Pamela Parker requested multiple continuances, each time without Phillips' presence or consent. The trial court granted the continuances, eventually pushing trial past the 90-day speedy trial deadline to July 14, 2014. See *State v. Phillips*, No. 115,326, 2017 WL 4216234, at *1 (Kan. App. 2017) (unpublished opinion).

In July 2014, Phillips filed two pro se motions objecting to "any and all continuances" and asserting that his counsel had continued the case outside his presence and without his consent. He contended that he should be discharged based on a violation of his speedy trial rights and his right to appear at all critical stages of the proceedings—the hearings where defense counsel requested continuances. Ruling on the pro se motions, the trial court acknowledged that it granted several continuances without

3

Phillips present. But the trial court found that K.S.A. 2014 Supp. 22-3402(g) prevented the trial court from assessing the delay to the State.

Phillips then requested two more continuances. Phillips was present for both continuance requests and his counsel had his consent to request these continuances. Trial was set for January 2015.

On the day trial was to begin, Phillips moved for dismissal for speedy trial violations. The trial court denied the motion and empaneled a jury to begin trial. But the jury was excused when Phillips entered into a plea agreement with the State. Phillips later moved to withdraw his guilty pleas, which the trial court granted. Phillips' case went to jury trial in October 2015.

At trial, Georgio and Jarvis testified that Phillips robbed the two smoke shops, although they did not watch the robbery.

Emily Snyder was the sole employee at Tom's Super Shop when it was robbed in August 2013. The State played surveillance footage of the incident for Snyder and showed her individual frames of footage. Snyder told police that she knew what the robber looked like and thought she would recognize him if she saw him again. But police never asked her to view a lineup or try to identify a suspect.

Montgomery testified that she recognized Georgio when he came into the Tee Pee Smoke Shop in September 2013 because she "took care of him about three years, probably ninth grade to eleventh grade. Took him in." She explained, "He lived in my house, I took him for haircuts, to the dentist. He didn't have a very stable condition. He eventually started living with his basketball coach. They took care of him." Montgomery watched Georgio walk out of the shop after buying a pack of cigarettes and watched him get into his Suburban. After the robbery was over, Montgomery recognized Georgio's

4

Suburban as the getaway car and described it on a 911 call. Less than 40 minutes after the robbery, police had pulled over the Suburban at a gas station and brought Montgomery to the gas station to identify the suspects. Montgomery identified Georgio, but could not identify any other person in the Suburban.

Tyler testified that while he robbed the two smoke shops, Phillips was not with him. Under a plea agreement, Tyler was placed on probation in exchange for his testimony, but he violated probation and was in custody when the trial occurred in this matter. Tyler testified that he no longer cared about the plea agreement because he was in prison. He also said that he was concerned about what would happen if people in prison knew that he testified against someone.

The jury found Phillips guilty of two counts of aggravated robbery. The trial court sentenced Phillips to 292 months in prison. Phillips then filed his first appeal.

Phillips argued that his speedy trial rights were violated when counsel, without his knowledge or consent, continued the case multiple times at hearings outside his presence. He also challenged the sufficiency of the evidence.

This court reversed the trial court's denial of Phillips' motion to dismiss for violation of speedy trial rights, citing *State v. Wright*, 305 Kan. 1176, 390 P.3d 899 (2017). *Phillips*, 2017 WL 4216234, at *1. The *Wright* court held that a continuance hearing is a critical stage and that a defendant's right to be present is violated when he or she is absent from a hearing at which counsel continues his or her case without the defendant's knowledge or consent. 305 Kan. at 1178. Citing *Wright*, this court ruled that Phillips' right to be present was violated but the record was insufficient to determine whether this violation was harmless. This court remanded for further proceedings and factual findings on Phillips' speedy trial rights, leaving aside the sufficiency of the evidence challenge for any later appeal. *Phillips*, 2017 WL 4216234, at *4.

On remand, Parker testified that she continued Phillips' trial dates in his absence and without consulting him. The prosecutor originally assigned to the case, C.J. Rieg, testified that she had all the evidence she needed within the 90-day speedy trial period. Rieg explained that all three codefendants had given statements to police implicating Phillips, and two of the three had entered plea agreements requiring them to testify. The trial court ruled that the violation of Phillips' right to be present was harmless, finding that if the case was tried within 90 days the State would have been ready for trial and the evidence would have been sufficient to convict Phillips.

Phillips timely appeals.

ANALYSIS

*Was the violation of Phillips' right to be present harmless error?*

When a defendant's right to be present is violated, the error may be declared harmless under the constitutional standard "'where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *Wright*, 305 Kan. at 1179 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011]).

First, Phillips asks this court to review K.S.A. 2018 Supp. 22-3402(g), acknowledging that our Kansas Supreme Court precedent controls. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

The question Phillips presents is whether the first sentence of K.S.A. 2018 Supp. 22-3402(g) is a condition precedent to the second sentence:

6

"If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is prosecutorial misconduct related to such delay. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay."

In *State v. Brownlee*, 302 Kan. 491, 510, 354 P.3d 525 (2015), Gustin Brownlee argued that the first sentence of subsection (g) sets up a precondition for applying the second sentence. Our Supreme Court disagreed with Brownlee's interpretation of the statute, holding that the second sentence is not entirely contingent on the first sentence.

"The second sentence covers the factual scenarios encompassed by the first sentence, *i.e.*, those in which the defendant alone or in consultation with counsel requested a delay. But it is not limited to such situations. Absent prosecutorial misconduct or a violation of a defendant's constitutional speedy trial right, the second sentence also is applicable to any factual situation in which a delay initially charged to the defense is subsequently charged to the State." 302 Kan. at 510-11.

Phillips notes that the *Brownlee* majority based its reasoning on the lack of a referent. The second sentence of K.S.A. 2018 Supp. 22-3402(g) uses an indefinite article, "*a* delay," rather than the definite article or other referent, that is, "*the* delay" or "*such* delay." The *Brownlee* dissent argued that the second sentence referred back to the type of delay described in the first sentence, even if it did not refer to "such delay." See 302 Kan. at 526 (Luckert, J., dissenting).

Phillips contends that the dissent's interpretation was correct. The *Brownlee* dissent focused on the fact that the Legislature could have given the two sentences

separate subsection numbers but did not. "Typically, sentences within the same subsection relate to one another and should be read together." 302 Kan. at 525 (Luckert, J., dissenting). Phillips asserts that the dissent was right and that delays that "shall not be used as a ground for dismissing a case" are only those delays requested by the defendant or by counsel with the defendant's consent. K.S.A. 2018 Supp. 22-3402(g).

But Phillips acknowledges that *Brownlee* binds this court and that he has no right to relief on this basis. Instead, the relief he seeks is for this court, either in the majority opinion or in a concurrence, to ask our Supreme Court to reconsider *Brownlee*. Phillips also raises the issue here to preserve it for a petition for review. The State similarly argues that *Wright* was wrongly decided, simply for purposes of preservation.

Phillips claims that insufficient evidence supports the trial court's ruling that the violation of his right to be present was harmless. Phillips points out that none of his nephews testified at the evidentiary hearing on remand. At trial, only the nephews said that Phillips robbed anyone. Phillips asserts that the State failed to prove that it would have obtained a conviction within the 90-day speedy trial period because "we will never know if the nephews would have snitched if called for trial sooner rather than later."

Phillips also argues that the State did not prove that the trial judge would have denied the continuances even if Phillips were present to object. The State correctly argues that the trial court did not need to determine whether requests for continuances would have been granted. The trial court evaluated whether the State would have been ready to try its case within 90 days. By framing the issue this way, the trial court necessarily assumed that all requests to continue trial would have been denied so that trial would start within 90 days. The trial court's approach made the question of granting continuances irrelevant.

8

And the State argues that Phillips asks this court to reweigh the evidence when he disputes whether the State could have produced testimony and other evidence within 90 days. At the evidentiary hearing, Rieg testified that in December 2013 she had statements that the nephews made to police, two of the nephews pleaded under plea agreements, and she held open a plea agreement with the third nephew. "I had all my evidence, I had the three nephews locked in to testify, so I didn't have an ID issue." Rieg also testified that the State did not uncover any new evidence after December 2013, the original trial date.

The State contends that the trial court found Rieg's testimony credible and that this court should not reevaluate witness credibility. Phillips is more skeptical, stating: "We just have to take the prosecutor's word that they would have snitched within the 90-day deadline." The State argues that it did not have to call the nephews as witnesses to corroborate the prosecutor's testimony. And the State notes that Phillips could have subpoenaed the nephews for the evidentiary hearing. Finally, the State points to other evidence supporting Phillips' conviction. Phillips' nephews implicated him in statements to police. Within 15 minutes of the second robbery, police pulled over the Suburban that Phillips was an occupant and found the gun, wig, and hat in the Suburban, plus $297 in cash in Phillips' pocket. In light of the entire record, the State proved beyond a reasonable doubt that there is no reasonable possibility that the continuances contributed to the verdict.

*Does sufficient evidence support the jury's verdict?*

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

9

It is only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

A verdict may be supported by circumstantial evidence, if that evidence provides a basis for a reasonable inference by the fact-finder about the fact in issue. Circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion. A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). There is no legal distinction between direct and circumstantial evidence in terms of their respective probative value. *State v. Lowery*, 308 Kan. 1183, 1236, 427 P.3d 865 (2018).

Phillips correctly asserts that neither smoke shop employee identified him. But this fact in isolation means little because this court reviews all the evidence in the light most favorable to the prosecution. Georgio testified that he left Tee Pee's Smoke Shop, made a right turn, then a left turn, and then police pulled him over at a gas station. He also stated that the men were still in the same seats that they were in when they left the smoke shop. Then, within 40 minutes, police brought Montgomery to the gas station where she identified Georgio, who had lived in her home for three of his teenage years. Jarvis testified that Georgio went into the smoke shop first but came out and said they should not rob it because he knew the lady that was working there. Nevertheless, Jarvis watched Tyler and Phillips get out of the car, go into the shop to "get some money," and come back. Police found the gun in the Suburban and $297 in Phillips' pocket, an amount consistent with the amount taken from the smoke shop. A rational fact-finder could have found Phillips guilty beyond a reasonable doubt.

*Did the trial court err in calculating Phillips' criminal history score?*

Finally, Phillips claims his sentence is illegal because the PSI report does not have enough information to conclude that his 2002 conviction for fleeing or eluding law enforcement was a felony. The State argues that remand and resentencing is not appropriate because Phillips does not challenge his sentence as illegal and because Phillips did not object to his criminal history score at sentencing.

An illegal sentence is a sentence imposed by a court that lacks jurisdiction; a sentence that does not conform to the applicable statutory provisions, either in character or the length of the punishment authorized; or a sentence that is ambiguous on the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1). Whether a sentence is illegal under K.S.A. 2020 Supp. 22-3504 is a question of law over which we exercise unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). The party asserting an illegal sentence bears the burden of proving some evidentiary basis of illegality. See *State v. Patterson*, 262 Kan. 481, 485-86, 939 P.2d 909 (1997).

The PSI report prepared for sentencing showed Phillips had a criminal history score of A. To receive a criminal history score of A, a defendant must have three or more adult convictions or juvenile adjudications for person felonies. K.S.A. 2020 Supp. 21-6809. The felony conviction that Phillips challenges here is a conviction for "Flee or Attempt to Elude an Officer" from February 2002.

The PSI report lists the statute violated as K.S.A. 8-1568. Under K.S.A. 8-1568(b), fleeing or attempting to elude a police officer is a person felony. But under K.S.A. 8-1568(a), fleeing or attempting to elude a police officer can be a class B misdemeanor, class A misdemeanor, or a severity level 9 person felony, depending on whether the defendant has previous convictions for fleeing or attempting to elude. Phillips argues that

11

the State failed to meet its burden of proof because his PSI report does not specify whether Phillips violated (a) or (b) under K.S.A. 8-1568.

If the determination that this crime was a person felony were incorrect, then Phillips' criminal history score would be reduced from A to B (two person felony convictions). See K.S.A. 2020 Supp. 21-6809. This reduction in his criminal history score would also reduce his presumptive prison sentence. See K.S.A. 2020 Supp. 21-6804(a).

"At the sentencing hearing, the State bears the burden of proving the constitutional validity of prior convictions used to enhance a sentence." *State v. Jones*, 272 Kan. 674, 681, 35 P.3d 887 (2001). K.S.A. 2020 Supp. 21-6814 outlines the steps for meeting this burden of proof:

> "(a) The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.
> "(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.
> "(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error."

The relief that Phillips seeks is for us to remand for resentencing. He asserts remand is necessary because his PSI report states that the conviction was for a felony but does not list subsection (b) or otherwise explain how his fleeing or attempting to elude conviction was not a misdemeanor. For support, Phillips cites *State v. Obregon*, 309 Kan. 1267, 444 P.3d 331 (2019), which he maintains stands for the proposition that it is the State's burden to show that his previous conviction was a felony. But Phillips' case differs

12

from *Obregon* because *Obregon* dealt with classifying an out-of-state crime as person or nonperson. Nevertheless, this court has since applied the *Obregon* holding when defendants challenge the inclusion, rather than the classification of out-of-state crimes, of previous offenses for criminal history purposes.

Particularly, in *State v. Chenault*, No. 121,998, 2020 WL 6935616, at *4 (Kan. App. 2020) (unpublished opinion), this court, in vacating Chenault's sentence and remanding his case to the trial court with directions, concluded: "Chenault's PSI report is lacking the critical information of which subsections he was adjudicated under for his prior crimes at issue, the classifications for those prior adjudications are not supported by substantial competent evidence." See *State v. Anderson*, No. 121,640, 2020 WL 6371059, at *5 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1042 (2021); *State v. McKoy*, No. 121,636, 2020 WL 5739730, at *2 (Kan. App. 2020) (unpublished opinion); *State v. Arnold*, No. 121,542, 2020 WL 5740900 at * 2 (Kan. App. 2020) (unpublished opinion).

At sentencing, the State has the burden to prove Phillips' criminal history by a preponderance of the evidence. *Obregon*, 309 Kan. at 1275-76. A review of this record reveals that the State has failed to meet this burden because we do not know from the record whether Phillips' 2002 fleeing and eluding conviction was a misdemeanor or a felony.

Thus, we vacate his sentence and remand this case to the trial court with directions to determine if Phillips' 2002 fleeing and eluding conviction was properly classified for criminal history purposes. If Phillips' 2002 fleeing and eluding conviction was not properly classified, the trial court is directed to resentence Phillips with the correct criminal history.

Affirmed in part, vacated in part, and remanded with directions.